JACQUELINE, INC., ET AL.,[1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Jacqueline, Inc. v. Commissioner
Docket Nos. 2982-65, 4708-65, 5701-65, 1560-66, 3731-66, 4596-66, 512-67, 2201-70, 2304-70, 2305-70, 2306-70, 5231-70.
United States Tax Court
T.C. Memo 1978-218; 1978 Tax Ct. Memo LEXIS 304; 37 T.C.M. (CCH) 937; T.C.M. (RIA) 78218; June 8, 1978, Filed *304 Louis D. Curet, for the petitioners. E.M. Quijano, for the respondent. DAWSON
SUPPLEMENTAL MEMORANDUM OPINION DAWSON, Judge: On April 21, 1978, petitioners filed a motion for reconsideration of the Memorandum Findings of Fact and Opinion (T.C. Memo. 1977-340) filed in these cases on September 27, 1977, and, alternatively, for further trial. Petitioners seek further consideration of (1) the constructive ownership issue insofar as it relates to the disallowance of Southland's claimed deductions for taxes, interest and depreciation attributable to the operation of Holiday Inns East and West, and (2) the depreciation on movable property, such as furniture, fixtures and office equipment, located in the two motels which respondent disallowed to Southland in his computations under Rule 155. A hearing on the motion for reconsideration was held in New Orleans on May 1, 1978. The parties have resolved the issue relating to the depreciation on movable property and it is no longer in controversy. Respondent has filed a notice of objection and memorandum in opposition to petitioners' motion for reconsideration of the constructive ownership issue with respect *305 to the land and buildings of Holiday Inns East and West. His opposition is based primarily on the proposition that the granting of the motion of petitioners at this late date would be prejudicial to respondent, citing Robin Haft Trust v. Commissioner, 62 T.C. 145, 147 (1974), vacated and remanded on other grounds 510 F. 2d 43 (1st Cir. 1975), and Koufman v. Commissioner, 69 T.C. 473, 476 (1977). We observed in our first opinion that this issue was close and difficult. The facts, however, are set forth on pages 22 to 26 of our findings, as follows: Constructive Ownership
Petitioner Motor Hotels of Louisiana, Inc. (hereinafter referred to as Motor Hotels) is a corporation organized under the laws of Louisiana on October 28, 1958.The principal offices of Motor Hotels were in Metairie, Louisiana, when the petitions were filed herein. For the fiscal years 1959 through 1966, Motor Hotels filed its United States Corporation Income Tax Returns (Form 1120) with the District Director of Internal Revenue, New Orleans, Louisiana. The Poirier group acquired the stock of Jacqueline and LeBaron in April of 1964 in exchange for cash, notes, *306 and assumed liabilities. In May 1964, Southland was incorporated. For all the taxable years in issue, legal title to Holiday Inns East and West was held by LeBaron and Jacqueline, respectively. The legal title to the land purchased in 1964 adjacent to Holiday Inn East and the 62 units constructed on it was held by Southland. A sale of the assets of LeBaron and Jacqueline to Southland, followed by a liquidation of both corporations, was contemplated by the Poirier group. Documents of sale were drafted in February of 1965 to be executed after a permanent financing arrangement was obtained by Southland. The mortgage obtained from National Life Insurance Company of Vermont was originally intended to be undertaken by Southland alone. A document to this effect was drafted but not executed. Instead, the mortgage was executed by LeBaron, Jacqueline, and Southland on February 12, 1965. The original plan to transfer title to Southland before executing the mortgage was not implemented because of unsettled claims against Jacqueline and LeBaron. Both corporations had creditors' claims outstanding and LeBaron also had a personal injury claim against it. It was thought by the attorney *307 for the Poirier group that a transfer of assets while these matters were pending would cause further legal problems. In March 1965, a plan of liquidation for Jacqueline and LeBaron was adopted by the Poirier group and filed with respondent. The plan was not implemented because of the pending lawsuits, franchise negotiations between the Poirier group and Holiday Inns of America, and construction difficulties with the additional 62 units. In 1966, the Poirier group, Southland, Jacqueline, LeBaron, Motels, Inc., and Motor Hotels all were parties to a lawsuit against Holiday Inns of America. The suit sought an injunction against Holiday Inns from canceling the Holiday Inn West franchise and $ 225 million in damages. A transfer of assets was not possible while this suit was pending. All franchise, mortgage, tax, and insurance payments were made by Southland. The checks were drawn on Southland's checking account. This was the only bank account maintained by the corporations. The daily receipts of Holiday Inns East and West were deposited in Southland's checking account. Separate expense accounts were maintained for Motels, Inc., Motor Hotels, and Southland. Although all disbursements *308 were made from Southland's bank account, the expenses for each of these corporations were separately entered on each account. Southland reported the income from Holiday Inns East and West on its tax returns. Jacqueline and LeBaron filed their final income tax returns on April 30, 1964. The parties agree that Southland does not have legal title to the land and improvements of Jacqueline and LeBaron. Respondent disallowed Southland's interest, tax, and depreciation deductions based on the properties to which Jacqueline and LeBaron hold legal title. Respondent allowed Southland to deduct the portion of the interest deduction for mortgage payments attributable to the 62 additional units and any additional interest and taxes paid on these units. Respondent also allowed Southland to deduct the remainder of the interest and taxes claimed as a rental expense deduction. Although Southland intended to take a stepped-up basis for the purchase price of LeBaron, Motor Hotels, and Jacqueline, it failed to do so. Instead, a carry-over basis for depreciation was used for the taxable years in issue. [Fn. ref. omitted.] Upon further consideration we think this record will support the *309 conclusion that Southland was the equitable, beneficial or constructive owner of the motel properties, and that it is entitled to deduct all of the operating expenses, including depreciation, interest and taxes. We are reversing our prior holding on this issue primarily on the application of the doctrine of substance over form--a hallmark of tax litigation. Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943); Helvering v. Lazarus & Co.,308 U.S. 252 (1939). Here all of the income from the operation of the motels flowed through Southland and it was treated for all practical purposes as the owner of the real property even though bare legal title remained in Jacqueline and LeBaron.
The most significant new authority cited by petitioners in support of their motion for reconsideration of this issue is the case of Koufman v. Commissioner, T.C. Memo. 1976-330. The legal issues and facts of the Koufman case are similar to those present here. There the taxpayer bought property with the intention of transferring title to a wholly owned corporation to be formed by him to be called "Northeast Properties, Inc." He took title in *310 his name personally on or about July 18, 1962, and borrowed money to construct a building on the property. The taxpayer borrowed money to construct a building and gave a mortgage on the land as collateral in connection with the loan. The building was finished in November 1962. The new corporation, Northeast Properties, Inc., was formed on December 28, 1962. On January 16, 1963, Northeast Properties opened a bank account and all the money from the rental of the buildings went into the account, even those rent checks which had been issued prior to the incorporation of Northeast Properties, Inc., which were payable to the taxpayer individually. Mortgage payments, rental receipts and expenses were all handled through the corporation's bank account, even though some of the bills were in the name of the taxpayer individually. This continued until November 26, 1963, at which time Northeast Properties executed a mortgage on the property. At that point Northeast Properties, Inc. did not have legal title to the property in question, but had been operating since the corporation was formed as though the corporation owned the property. After the mortgage was executed on November 26, 1963, it *311 was discovered that title to the property had never been transferred to Northeast Properties, Inc., so, to clear title to the property, the legal title was transferred to the corporation on November 26, 1963. Northeast Properties, Inc. filed a Federal income tax return for the period in question and claimed income and deductions in connection with the property prior to the date of the sale. The Commissioner argued that Northeast Properties, Inc. did not become the legal owner of the property in question until November 26, 1963, the date of the sale, and, therefore, all rental income from the time the building was completed until the title was transferred to Northeast Properties, Inc. should be taxed to the taxpayer individually and not to the corporation. On these facts this Court held that: (1) Northeast Properties, Inc. was to be considered the owner of such property for Federal income tax purposes, even though the legal title was not transferred until November 26, 1963; and (2) the taxpayer was not taxable on the rental income derived from such property and was not entitled to the business deductions in connection therewith. Applying the same rationale to the instant *312 cases, we think the substance of this transaction involving the acquisition by the Poirier Group of Holiday Inns East and West was that these motels were acquired by the Poirier Group with the full intent to have legal title and ownership vest in Southland and to have Jacqueline and LeBaron liquidated. Furthermore, Southland was treated as owner and in fact operated as owner; it received and reported income from and paid the expenses attributable to ownership of the property in question. Thus, Southland appears to be the logical and proper legal entity to claim the depreciation on the improvements of Holiday Inns East and West. Respondent suggests that Jacqueline and LeBaron are entitled to and should claim these deductions, but both of these corporations have been virtually dormant since 1964. They have not filed any income tax returns, and have no income attributable to them against which to offset the depreciation, interest and taxes in question. They were not the beneficial owners of the motels; they simply held the bare legal title. These properties were not in a vacuum from 1964 to 1969. They were in constant use day by day during such years and were deteriorating. Since *313 the income from these properties is taxable, then the deductions recognized by law should be allowed to outset such income. Otherwise a gross distortion would result. In short, Southland operated Holiday Inns East and West in a manner consistent with an entity having the benefits and bearing the burdens of an asset. On further examination of this record we are satisfied that Southland did have a capital investment in the motel properties legally owned by LeBaron and Jacqueline by virtue of the payments it made on principal and interest on the $ 2,100,000 mortgage on the properties. Certainly the execution of a mortgage on both properties in the name of Southland constitutes evidence of an investment therein for basis purposes. It is significant that the original application for the mortgage loan on the entire property was in the name of Southland only, but because of complications which prohibited the liquidation of Jacqueline and LeBaron, they still retained legal title to the properties and their names were also included on the mortgage. However, the testimony of Leon Poirier shows that Southland was the principal mortgagor and the debtor who paid the mortgage notes. Accordingly, *314 we hold that Southland was the equitable, beneficial and constructive owner of Holiday Inns East and West. It follows that Southland is entitled to deduct the expenses, including depreciation, interest and taxes, incurred in the operation of the motels. In determining its basis for depreciation of the property, Southland is entitled to carryover the adjusted basis for depreciation on the books of Jacqueline and LeBaron. Our opinion on Issue 3--Constructive Ownership--contained inT.C. Memo. 1977-340 is modified in accordance with the views expressed in this supplemental opinion. Therefore, the parties are directed to submit modified computations for entry of decisions under Rule 155. An order granting petitioners' motion for reconsideration will be entered. Footnotes
1. The LeBaron Corporation, docket No. 4708-65; Motor Hotels of Louisiana, Inc., docket No. 5701-65; Jacqueline, Inc., docket No. 1560-66; Motor Hotels of Louisiana, Inc., docket No. 3731-66; The LeBaron Corporation, docket No. 4596-66; Jacqueline, Inc., docket No. 512-67; Southland Inns, Inc., docket No. 2201-70; Motor Hotels of Louisiana, Inc., docket No. 2304-70; The LeBaron Corporation, docket No. 2305-70; Jacqueline, Inc., docket No. 2306-70; and Southland Inns, Inc., docket No. 5231-70 have been consolidated for purposes of trial, briefs, and opinion.↩